UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WOODLEY GEINCHARLES,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ERIC ROKOSKY, *et al.*,<br><br>　　　　Respondents. | Case No. 26–cv–00150–ESK<br><br><br>OPINION |

**KIEL, U.S.D.J.**

　　**THIS MATTER** comes before the Court on petitioner Woodley Geincharles's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Petition) (ECF No. 1.) Respondents Elizabeth Detention Center (Center) Warden Eric Rokosky, Immigration and Customs Enforcement (ICE) Director Todd M. Lyons, Department of Homeland Security (Department) Secretary Kristi Noem, and United States Attorney General Pamela Bondi oppose the Petition. (ECF No. 8.) For the following reasons, I will deny the Petition without prejudice.

## I.　BACKGROUND

　　Petitioner is a citizen of Haiti. (ECF No. 1 ¶ 16.) He entered the United States on August 15, 2021, at which time he was detained at the border and inspected by an immigration officer. (ECF No. 8–1 p. 2.) Petitioner alleged a fear of persecution or torture if he returned to Haiti, and an asylum officer concluded on October 18, 2021 that petitioner had sufficiently demonstrated that fear. (*Id.*) Petitioner was released on parole as part of the alternatives to detention program. (ECF No. 9–1.)

　　Petitioner was arrested on a state misdemeanor charge in March 2025. (ECF No. 1 ¶ 17.) ICE took petitioner into custody and detained him at the

Center.  (*Id.*)  On June 26, 2025, petitioner applied for temporary protected status (TPS) as a citizen of Haiti.  (*Id.* ¶ 18.)  An immigration judge ordered petitioner's removal on September 29, 2025.  (*Id.* ¶ 17.)  Petitioner filed an appeal with the Board of Immigration Appeals, and that appeal is ongoing.  (*Id.*)

On January 9, 2026, petitioner filed the Petition alleging that ICE was illegally detaining him because he is a TPS applicant.  (ECF No. 1.)  I ordered respondents to answer by January 16, 2026.  (ECF No. 3.)  Respondents filed their answer on January 21, 2026 after receiving petitioner's consent for an extension.  (ECF No. 8.)  Petitioner filed a reply on January 23, 2026.  (ECF No. 9.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

Petitioner was detained within the District of New Jersey when he filed the Petition, and he asserts that his continued detention violates due process.  Therefore, I have habeas jurisdiction over his claims.  *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (per curiam) (noting jurisdiction for "core habeas petitions" lies in the district of confinement).

## III. DISCUSSION

Petitioner asserts that respondents are statutorily prohibited from detaining him because he is a TPS applicant.  "The TPS program 'provides humanitarian relief to foreign nationals in the United States who come from specified countries.'"  *Echeverria v. Janecka*, No. 1:25–cv–01832, 2026 WL

2

44896, at *1 (E.D. Cal. Jan. 7, 2026) (quoting *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021)).  The Department "'may designate a country for the program when it is beset by especially bad or dangerous conditions, such as arise from natural disasters or armed conflicts.  The country's citizens, if already present in the United States, may then obtain TPS." *Sanchez*, 593 U.S. at 412. Haiti's TPS designation is presently valid until 11:59 p.m. on February 3, 2026. *See* Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg. 54733–01, 54739 (Nov. 28, 2025).

"That status, once granted, provides a noncitizen with certain benefits 'for as long as the TPS designation lasts.'  Those benefits include a statutory prohibition on the noncitizen's removal and detention." *Echeverria*, 2026 WL 44896, at *1 (quoting *Sanchez*, 593 U.S. at 412); *see also* 8 U.S.C. §§ 1254a(a)(1), (d)(4).  However, removal proceedings may continue and a noncitizen "may even be ordered removed while under TPS, though the order remains inexecutable so long as the [noncitizen] remains a TPS beneficiary." *Duarte v. Mayorkas*, 27 F.4th 1044, 1054 (5th Cir. 2022) (citing *Dhakal v. Sessions*, 895 F.3d 532, 537 n. 8 (7th Cir. 2018); *Matter of Sosa Ventura*, 25 I. & N. Dec. 391, 393 (BIA 2010)).

Petitioner has not been granted TPS designation, but he argues that he has made a prima facie case of TPS eligibility and that eligibility prevents respondents from detaining him.  (ECF No. 1 ¶¶ 4, 5, 11.)  Respondents do not concede that petitioner is eligible for TPS and assert that even if he were eligible, "protection against detention extends only to aliens who have actually been 'provided temporary protected status,' not to those who have simply established a prima facie case of eligibility."  (ECF No. 8 p. 4 (quoting 8 U.S.C. § 1254a(d)(4).  Respondents argue that petitioner's detention is permissible pursuant to 8 U.S.C. § 1225(b)(1).  (*Id.* p. 2.)

3

"When the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting *Decatur v. Paulding*, 39 U.S. 497, 503 (1840)). Here, the relevant statute is 8 U.S.C. § 1254a(d)(4), which states that a noncitizen "provided temporary protected status under this section *shall not be detained* by the Attorney General on the basis of the alien's immigration status in the United States." (emphasis added). Petitioner argues § 1254a(a)(4) extends that protection against detention to noncitizens who have made a prima facie case of TPS eligibility. (ECF No. 1 ¶¶ 6, 7.) That section states:

> (4) Temporary treatment for eligible aliens
>
> (A) In the case of an alien who can establish a prima facie case of eligibility for benefits under paragraph (1), but for the fact that the period of registration under subsection (c)(1)(A)(iv) has not begun, until the alien has had a reasonable opportunity to register during the first 30 days of such period, the Attorney General shall provide for the benefits of paragraph (1).
>
> (B) In the case of an alien who establishes a prima facie case of eligibility for benefits under paragraph (1), until a final determination with respect to the alien's eligibility for such benefits under paragraph (1) has been made, the alien shall be provided such benefits.

Accordingly, petitioner argues that respondents are prohibited from detaining him.

I disagree. Section 1254a(a)(4) limits the benefits extended to TPS eligible noncitizens to the benefits appearing in paragraph (1), which are protection from removal from the United States and an "'employment authorized' endorsement or other appropriate work permit." 8 U.S.C. § 1254a(a)(1). That is all. This reading is supported by 8 C.F.R. § 244.10, which states in relevant part that

> Temporary treatment benefits shall be evidenced by the issuance of an employment authorization document. The alien shall be given, in English and in the language of the designated foreign state or a language that the alien understands, a notice of the registration requirements for Temporary Protected Status and a notice of the following benefits:
>
> (i)   Temporary stay of deportation; and
>
> (ii)  Temporary employment authorization.

8 C.F.R. § 244.10(e)(1); *see also Mansor v. United States Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 199 (W.D. Wash. 2023) ("The temporary treatment benefits are protection from deportation and employment authorization.") No further benefits are listed.

"A 'fundamental canon of statutory construction' is that where a section of a statute does not include a specific term or phrase used elsewhere in the statute, 'the drafters did not wish such a requirement to apply.'" *In re Visteon Corp.*, 612 F.3d 210, 224 (3d Cir. 2010) (quoting *United States v. Mobley*, 956 F.2d 450, 452–53 (3d Cir. 1992)). Therefore, it is plain that Congress did not intend to give TPS applicants the full protections and benefits that are accorded to TPS recipients. By its plain language, § 1254a(d)(4) only applies to noncitizens who are TPS recipients; TPS applicants are protected from removal while their applications were being considered, but not detention. Assuming without deciding that petitioner has established prima facie eligibility for TPS status, § 1254a does not categorically prohibit his detention.

In addition to disputing petitioner's TPS eligibility, respondents assert that 8 U.S.C. § 1225(b)(1) authorizes petitioner's detention. (ECF No. 8 p. 1.) "Petitioner was (i) apprehended near the border, (ii) placed into expedited removal proceedings, and (iii) passed a credible-fear screener interview for an asylum claim. Petitioner thus falls under the mandatory detention requirements of § 1225(b)(1)." (*Id.* (internal citation omitted)). Respondents

submit a Notice to Appear (Notice) dated October 21, 2021 in support of their argument. (ECF No. 8–1 p. 2.) The Notice identified petitioner as a noncitizen "present in the United States who has not been admitted or paroled." (*Id.*) It alleged that he "entered the United States at an unknown location on or about 8/15/2021" and was "not then admitted or paroled after an inspection by an immigration officer." (*Id.*) Petitioner has submitted ICE Form I-830E form dated November 9, 2021 indicating that he was released from ICE custody on "parole with ATD."[1] (ECF No. 9–1).

Petitioner was apprehended shortly after crossing the border and was provided humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). "[P]arole of such [noncitizen] shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Noncitizens "who are paroled are thus subject to the 'entry fiction' in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude." *Faqirzada v. Rokosky*, No. 25–cv–16639, 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026). In other words, "[p]etitioner is treated legally as if he remained at the border for the duration of that parole. Petitioner thus remained subject to both the removal procedures, and accompanying mandatory detention, which applies to aliens detained under § 1225(b)(1)." *Id.* (internal citation omitted). Petitioner is not entitled to release or bond hearing under this statute.

---

[1] I understand ATD to refer to the alternatives to detention program. *See Garcia-Alvarado v. Warden*, No. 25–cv–16109, 2025 WL 3268606, at *1 (D.N.J. Nov. 24, 2025).

However, noncitizens who are subject to prolonged detention may be entitled to a bond hearing should their detention become so prolonged as to become arbitrary. *See, e.g., Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442–43 (D.N.J. 2019) (finding that detention had become arbitrary at twenty months). Petitioner has been detained for almost a year, which is more than the six-month presumptively reasonable period of detention, but the duration of confinement by itself does not rise to the level of a due process violation. *See Jennings v. Rodriguez*, 583 U.S. 281, 311–12 (2018)(rejecting argument that there is a six-month limitation on detention without a bond hearing). "[I]t is insufficient that [p]etitioner's detention has merely become suspect by reaching this six month to a year threshold, in order for [p]etitioner to be entitled to release he must show that his ongoing detention is so unreasonable or arbitrary that it has actually violated his rights under the Due Process Clause." *Dryden v. Green*, 321 F. Supp. 3d, 496, 502 (D.N.J. 2018). This "determination on reasonableness must be highly fact specific … ." *Id.* (internal quotation marks omitted). Petitioner has not submitted sufficient facts for me to conclude that his continued detention violates the Due Process Clause, so his challenge must fail.

Petitioner's detention is permitted pursuant to § 1225(b)(1) and has not risen to the level of a due process violation on the facts before the Court.[2] The Petition will be denied without prejudice.

---

[2] I express no opinion as to whether petitioner may be able to prove a due process violation under a different set of facts.

## IV. CONCLUSION

For the reasons stated above, the Petition is denied without prejudice. An appropriate Order accompanies this Opinion.

                                              */s/ Edward S. Kiel*
                                              **EDWARD S. KIEL**
                                              UNITED STATES DISTRICT JUDGE

Dated: February 2, 2026